The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments of the parties. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is duly self-insured and Key Risk Management is the servicing agent.
4. Plaintiffs average weekly wage was $294.07.
5. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1. These records consist of documentation from PrimeCare of Northpoint, William F. Folds, M.D., Joe E. Hilton, M.D., N.C. Baptist Hospitals, Forsyth Memorial Hospital, G. Frank Crowell, M.D., Stephen M. Kirkland, M.D., Edward G. Hill, Jr., M.D., and PrimeCare.
6. The issues before the undersigned are: (i) whether plaintiff sustained an injury by accident arising out of and in the scope of his employment with defendant-employer; (ii) whether plaintiffs claim is barred by N.C.G.S. 97-24; or (iii) whether defendant should be estopped from raising the statute of limitations and should be required to pay compensation?
 * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Jones, plaintiff was forty-three (43) years old and had a high school education.
2. Plaintiff began his employment with defendant-employer in 1993 and has worked as a maintenance man and forklift driver for defendant-employer, a company affiliated with Phoenix Packing.
3. On August 1, 1995, plaintiff was changing a light bulb at work. Plaintiff was required to scale a ladder in order to be able to change a light bulb. The ladder was unsteady and caused plaintiff to fall to the concrete floor hitting his back and head.
4. Plaintiff was working alone on the day of the accident and felt he would improve.
5. Plaintiff reported the accident to his supervisor, Graham Petree, on August 31, 1995. Mr. Petree completed a Form 19 indicating Plaintiff had fallen on his back and hit his head on the concrete floor.
6. The reverse side of the Form 19 provides information to plaintiff indicating a claim must be filed with the North Carolina Industrial Commission within two (2) years of the injury. Plaintiff signed this side of the Form 19 indicating he had received a copy.
7. Mr. Petree gave plaintiff a workers compensation authorization for plaintiff to receive medical treatment relating to his injury. Plaintiff was directed to PrimeCare of Northpoint. Upon arrival, plaintiff informed the physician that he had fallen from a ladder onto his back and head. Plaintiff denied he had lost consciousness and was diagnosed with a cervical and lumbar strain. Plaintiff was released to return to work without restriction on the same day.
8. Plaintiff continued to complain of headaches and was returned to PrimeCare for a follow-up visit. A CT Scan was taken on September 8, 1995 and the results of the scan were normal.
9. Plaintiff did not seek any medical treatment relating to this matter for over nineteen (19) months.
10. On April 21, 1997, plaintiff presented himself to Forsyth Memorial Hospital and indicated to the physicians that he had a syncope episode two (2) weeks earlier. Plaintiff was referred to G. Frank Crowell, M.D.
11. Dr. Crowell examined plaintiff of April 23, 1997, at which time, plaintiff indicated to Dr. Crowell he had fallen off a ladder two (2) years earlier and had severe headaches for a short period of time but eventually the headaches were resolved. Plaintiff indicated to Dr. Crowell that he had been in normal health until three (3) weeks prior to his visit to Forsyth Memorial Hospital. Plaintiff had a sudden pop and a severe pain followed by an incapacitating headache three (3) weeks prior to that visit. Plaintiff indicated two (2) syncope episodes had followed.
12. Dr. Crowell suspected an aneurysm and ordered additional testing. Dr. Crowell wrote plaintiff out of work during this time.
13. Prior to Dr. Crowell writing plaintiff out of work, plaintiff had not missed any work since August 1995 for a work injury or any other reason.
14. Plaintiff was examined by Kenneth Haisty, M.D., for a possible cardiac etiology on May 13, 1997. Again, plaintiff related to Dr. Haisty a history of recurrent syncope and headaches since April 18, 1997. Plaintiff indicated to Dr. Haisty he had headaches following his fall from the ladder two (2) years earlier but the headaches had resolved. Plaintiff had no further problems until the first part of April when he felt something snap in the back of his head and he had recurrent headaches since that time. Dr. Haisty recommended further testing but plaintiff refused.
15. Dr. Crowell released plaintiff to return to work on May 21, 1997.
16. Plaintiff did not miss any work. Dr. Crowell had released plaintiff from work until he began treating with Stephen M. Kirkland, M.D. Dr. Kirkland believed plaintiffs episodes of syncope might have been caused by a cardiac dysrhythmia and removed plaintiff from work on November 5, 1997. Dr. Kirkland was not able to determine the etiology of plaintiffs condition and returned plaintiff to Dr. Crowell for a neurological follow-up.
17. On December 8, 1997, Dr. Crowell reported a history of improvement with no syncope until earlier in the week. Dr. Crowell treated plaintiff for suspected seizure disorders with Dilantin.
18. Dr. Crowell released plaintiff to return to work on January 7, 1998.
19. Plaintiff continued to work without restriction until May 18, 1998.
20. Dr. Crowell continued to treat plaintiff for seizures during this time period, however, Dr. Crowell was concerned the plaintiff had not reached therapeutic levels of medication. Dr. Crowell referred plaintiff for neurological consults with William O. Bell, M.D., C. A. ODonovan and Edward Hill, M.D. Dr. Bell thought plaintiff was having epileptic seizures and Dr. ODonovan considered vasovagal syncope versus pseudoseizures.
21. On October 2, 1998, Dr. Hill evaluated plaintiff and believed plaintiff had vascular type headaches as a result of the August 1995 incident at work. Until that time, no physician had determined plaintiff had syncope episodes were related to a work injury.
22. Plaintiff admitted Dr. Hill was the first physician to suggest a relationship between his syncope episodes and headaches from the work injury.
23. During all the time plaintiff received subsequent treatment from Forsyth Memorial Hospital, plaintiff had gone to Allison Meadows, defendant-employers workers compensation administrator. Plaintiff had not informed Ms. Meadows that any of syncope episodes were related to his injury until Dr. Hill advised him of his diagnosis.
24. All of the medical treatment beginning with Forsyth Memorial Hospital bills and the bills thereafter were filed on defendant-employers group health insurance. These claims were processed by Ms. Meadows who processed both the workers compensation claims and the group health insurance claims concerning defendants employees. Although Ms. Meadows did receive the out-of-work notes for plaintiff, she did not receive copies of his medical reports.
25. Plaintiff had not missed any time from work due to any medical condition until April 23, 1997. When plaintiff missed this work, there was no indication there was a connection between plaintiffs condition and any work-related activity. As a result, plaintiff completed an application for short-term disability.
26. Dr. Crowell completed a portion of this form indicating that the nature of plaintiffs disability was not related to a work-related injury but instead was due to sickness. There was no documentation from any physician until Dr. Hill plaintiff was suffering from any work-related activity.
27. Plaintiff asserts he had informed many individuals at work of his problems. However, Ms. Meadows, Mr. Petree and Mr. Skinner deny ever being told these headaches or blackouts were as a result of the accident at work.
28. No one had any indication there was any relationship between the fall at work and plaintiffs medical condition until October 1998 when Dr. Hill suggested this diagnosis.
29. Ms. Meadows never told plaintiff she would handle his workers compensation claim and plaintiff admitted Ms. Meadows never indicated he did not need workers compensation benefits.
30. Mr. Petree did not tell plaintiff not to obtain workers compensation benefits or indicate he would handle any aspect of a possible workers compensation claim for the plaintiff.
31. Ms. Meadows never advised plaintiff to file claims with his group health or disability insurance instead of workers compensation. Ms. Meadows did not receive the medical bills nor the medical reports which were paid by the group health or workers compensation.
32. Plaintiff was terminated in September 1998 after Dr. Bell released plaintiff to work with restrictions the defendant-employer could not accommodate.
33. Plaintiff has not worked in any capacity since May 18, 1998.
34. Plaintiff did not file a claim with the North Carolina Industrial Commission until he forwarded a Form 18 on or about November 12, 1998. This was three (3) years, two (2) months after the date of the injury and two (2) years, seven (7) months after the last payment of medical expenses by defendant-employers servicing agent on April 23, 1996.
35. There is no evidence of egregious or affirmative statements or conduct on the part of Ms. Meadows, the workers compensation administrator, or any other agent or employee of defendant-employer which create any detrimental reliance on plaintiffs part that his workers compensation claim was being taken care of, filed for him or that he did not need to file or follow-up in any way relating to his claim.
 * * * * * * * * * * *
Based on the findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On August 1, 1995, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant-employer when he fell from a ladder injuring his back and head. N.C.G.S. 97-2(6).
2. As result of his injury, plaintiff received medical treatments from PrimeCare of Northpoint. Plaintiff was released to return to full duty without restriction on September 8, 1995. N.C.G.S. 97-25.
3. Plaintiffs medical expenses were paid by defendant-employers servicing agent for this medical treatment on April 23, 1996. N.C.G.S. 97-25.
4. When no compensation has been paid and employers liability has not been otherwise established, the Commission lacks jurisdiction unless a claim is filed with the North Carolina Industrial Commission within two (2) years of last payment of medical compensation. In the instant case, since plaintiff failed to file his claim within the requisite time period, the Commission lacks jurisdiction. N.C.G.S. 97-24; Reinhardt v.Womens Pavilion, Inc., 102 N.C. App. 83, 401 S.E.2d 138
(1991).
5. Furthermore, plaintiff has failed to prove defendant-employer engaged in conduct or made statements so as to employ the doctrine of estoppel and prevent defendant from raising the time limitation. N.C.G.S. 97-24; Reinhardt v. WomensPavilion, Inc., 102 N.C. App. 83, 401 S.E.2d 138 (1991); Craverv. Dixie Furn. Co., 115 N.C. App. 570, 447 S.E.2d 789 (1994); Parkerv. Thompson-Arthur Paving Company, 100 N.C. App. 367,396 S.E.2d 626 (1990).
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
 ORDER
1. Under the law, plaintiffs claim must be, and the same is, DENIED.
2. Each party shall bear its own costs.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ____________________ THOMAS J. BOLCH COMMISSIONER
S/ ____________________ CHRISTOPHER SCOTT COMMISSIONER
DCS/nwg